UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

EARL THOMAS BOUGHNER,

             Petitioner,                          Civil Action No.
                                                  04-CV-71638-DT
vs.
                                                  HON. BERNARD A. FRIEDMAN
HUGH WOLFENBARGER,

             Respondent.
_____/

## OPINION AND ORDER ACCEPTING MAGISTRATE JUDGE'S
## REPORT AND RECOMMENDATION

This matter is presently before the court on a petition for a writ of habeas corpus. Respondent opposes issuance of the writ. The court referred the matter to Magistrate Judge Donald Scheer who recommends that the petition be dismissed. Petitioner objects to the report and recommendation. The court reviews *de novo* those portions of the magistrate judge's report and recommendation to which a specific objection has been made. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

This case arises from petitioner's *nolo contendere* plea to a second degree murder charge in St. Clair County Circuit Court, following which petitioner was sentenced to a prison term of 23 to 60 years. Petitioner's subsequent motion to withdraw his plea and for resentencing was denied. The Michigan Court of Appeals denied petitioner's delayed application for leave to appeal, and the Michigan Supreme Court denied petitioner's application for leave to appeal from the Court of Appeals' decision. Petitioner was originally charged with felony murder, unlawful driving away of a motor vehicle, larceny from a motor vehicle, and operating a motor vehicle while licence

suspended or revoked.  Petitioner eventually tendered a *nolo* plea to an additional count of second degree murder in exchange for the dismissal of the original charges.

All charges stemmed from a series of events that occurred on October 12, 2000.  The prosecutor alleged, and the evidence presented at the preliminary examination indicated, that at approximately 3:00 a.m. on that date petitioner came onto the parking lot of a business in Port Huron, Michigan, and stole some CDs and a stereo from a parked vehicle.  He then drove away in a pickup truck that he stole from the same parking lot.  When a sheriff's deputy attempted to stop petitioner, petitioner backed up at a high rate of speed, nearly hitting the deputy, and sped off. Approximately one minute later, petitioner blew through a stop sign at a minimum speed of 49 miles per hour (in a 25 m.p.h. zone) and crashed into a van occupied by two people.  One of the van occupants died at the scene.  The other died several days later from injuries sustained during the collision.  Firefighters used the jaws of life to extract petitioner from the pickup truck.  His blood alcohol level was 0.12.

Petitioner challenges the plea and sentence on three grounds: (1) the plea allegedly was involuntary, (2) the sentence allegedly was disproportionately severe punishment for the offense, and (3) trial counsel was ineffective.  The court agrees with the magistrate judge's assessment of these arguments and with his recommendation to dismiss the petition on the merits.[1]

---

[1]Although the issue is not discussed in the report and recommendation or in petitioner's objections, the court notes that respondent includes "procedural default" among his reasons for opposing the petition.  The record indicates that petitioner tendered his *nolo contendere* plea on May 8, 2001, and that he was sentenced on June 4, 2001.  Petitioner took no action to challenge the conviction or sentence until June 4, 2002, when he filed a motion with the trial court to withdraw his plea, for resentencing, and for an evidentiary hearing.  The trial court denied the motion on August 5, 2002.  On November 14, 2002, the Michigan Court of Appeals issued a summary order "that the delayed application for leave to appeal is denied for lack of merit in the grounds presented."  On April 29, 2003, the Michigan Supreme Court ordered that "the

Petitioner's central contention, which merges his first and third arguments, is that his plea was involuntary because his trial counsel was ineffective. The court agrees with the magistrate judge's analysis of this argument. Much of petitioner's argument is based on a *post hoc* evaluation of the evidence and criticism of trial counsel's advice to plead guilty. Petitioner now, through his habeas counsel, highlights the evidence which, if the matter had been tried and if the jury had been persuaded by petitioner's view of this evidence, might have resulted in petitioner being convicted of a lesser charge or perhaps acquitted. For example, habeas counsel argues that the prosecutor may have had difficulty establishing malicious intent (because, among other things, petitioner claimed to have amnesia regarding the entire incident); that petitioner was not positively identified as the driver of the pickup truck; that perhaps the driver was actually petitioner's friend, Todd Black, who

---

application for leave to appeal from the November 14, 2002 decision of the Court of Appeals is considered, and it is denied, because we are not persuaded that the questions presented should be reviewed by this Court."

This chronology appears to indicate that petitioner forfeited his right to have the Michigan Court of Appeals review the merits of his appeal, as well as his right to seek such review by the Michigan Supreme Court, because he failed to file a notice of appeal by the deadline required by the Michigan Court Rules. Under MCR 7.204(A)(2)(b), a notice of appeal in a criminal case must be filed "within 42 days after entry of the judgment or order appealed from." If a motion for resentencing is filed, then this 42-day period begins to run from the entry of the order denying the motion for resentencing, but only if the motion was filed within 42 days after entry of the judgment. These deadlines were clearly missed in the present case. The Michigan Court Rules do provide a procedure for a party to seek leave to appeal after the 42-day appeal-of-right deadline has passed. *See* MCR 7.205. Based on the record presently before the court, however, it is not clear whether petitioner complied with the various requirements for seeking a "late appeal."

Absent cause and prejudice, a federal court may not reach the merits of claims that have been procedurally defaulted. *See Reed v. Farley*, 512 U.S. 339, 354-55 (1994); *Richey v. Mitchell*, 395 F.3d 660, 678 (6th Cir. 2005). A procedural default occurs, among other circumstances, when a state prisoner files an untimely appeal. *See Coleman v. Thompson*, 501 U.S. 722 (1991). While a procedural default can be overcome if the petitioner shows sufficient cause for the default and sufficient prejudice resulting therefrom, petitioner in the present case has shown neither. This procedural default is an independent basis for denying habeas relief in the present case.

3

"could very well have bailed out of the back window," Objections at 11; that no fingerprints were taken from the truck's interior; and that petitioner had a mark on his right shoulder "which is indicative of where a passenger wears a seatbelt, not a driver," Objections at 12.  Habeas counsel argues that trial counsel was ineffective because he failed to fully apprise petitioner of these defenses, and that the plea was not voluntary because it was based on incomplete information.  Habeas counsel also contends that trial counsel incorrectly told petitioner that the sentence would not exceed 14 years, whereas the statutory maximum, as the trial judge explained at the plea colloquy, was life.  Further, habeas counsel argues that trial counsel was ineffective, and undermined the voluntariness of the plea, by failing to ensure that petitioner's family members were present at the plea hearing.  Petitioner was 17 years old at the time and, according to habeas counsel, he should have had the benefit of family support in making this important decision.

Petitioner's argument boils down to the contention that he would not have pled guilty if his trial counsel had not been ineffective.  "Inadequate representation by counsel is a ground for relief only if the deficiencies of counsel were so serious that defendant did not have 'effective assistance of counsel' in the constitutional sense."  3 C. Wright & A. Miller, *Federal Practice and Procedure* § 594 (1982).  In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court established a two-part test for determining whether counsel was constitutional ineffective:

> First, the defendant must show that counsel's performance was deficient.  This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.  Second, the defendant must show that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Id.* at 687.  The Court further stated that "the proper standard for attorney performance is that of

4

"reasonably effective assistance."  *Id.*   That is, "the defendant must show that counsel's representation fell below an objective standard of reasonableness."  *Id.* at 688.  The test is "whether counsel's assistance was reasonable considering all the circumstances."  *Id.*   Further,

> [j]udicial scrutiny of counsel's performance must be highly deferential. . . .  Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."  There are countless ways to provide effective assistance in any given case.  Even the best criminal defense attorneys would not defend a particular client in the same way.

*Id.* at 689.  *See also United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992) ("the threshold issue is not whether [defendant's] attorney was inadequate; rather, it is whether he was so manifestly ineffective that defeat was snatched from the hands of probable victory").

Petitioner has failed to show that his trial counsel was ineffective under the standard articulated by *Strickland*.  While habeas counsel has identified various pieces of evidence which might have worked in petitioner's favor had the matter been tried, the fact is that a great deal of evidence showing petitioner's guilt existed as well.  The evidence, which was presented at the preliminary examination, need not be recounted here.  For present purposes it suffices to say that plaintiff was identified as the driver.  His blood alcohol level was established by the toxicology report.  The speed and recklessness of petitioner's driving, which was established by the accident reconstructionist, and the other unlawful behavior preceding the crash supplied sufficient evidence of the requisite intent, namely, that he committed "an act that is in obvious disregard of life-endangering consequences," *People v. Mayhew*, 236 Mich. App. 112 (1999).   Under the circumstances of this case, it was perfectly reasonable for trial counsel to advise petitioner to plead

guilty to second-degree murder in exchange for the prosecutor's agreement to dismiss the other charges.

        The court is not persuaded that the voluntariness of the plea was vitiated by trial counsel's alleged statement to petitioner that he "would not get more than 10-14 years." Objections at 5. As the magistrate judge correctly noted, this argument is foreclosed by *Ramos v. Rogers*, 170 F.3d 560, 565 (6th Cir. 1999), where the court of appeals held that a defendant's affirmative statements on the record, given in the course of a proper plea colloquy, conclusively establish the defendant's awareness of the potential consequences of pleading guilty and "cure[] any misunderstanding [defendant] may have had about the consequences of his plea." In the present case, the trial judge questioned petitioner whether he understood "that by pleading guilty to that charge (second degree murder) that you can get up to life in state prison," and petitioner responded, "Yes, your Honor." Plea Hearing Tr. at 7-8. After listing the rights he was waiving by pleading guilty, the trial judge asked petitioner if any promises or threats had been made to get him to plead guilty, and petitioner responded to both questions in the negative. Asked whether he "was pleading guilty through *nolo contendere* to this murder in the second degree, the potential up to life sentence felony, by your own choice," petitioner responded, "yes." *Id.* at 8. The prosecutor then recounted the relevant incriminating testimony, witness by witness, from the preliminary examination, and petitioner indicated in response that he acknowledged and agreed with each witness' testimony. *Id.* at 10-13. The trial judge found that the plea was being made freely and voluntarily. *Id.* at 15. This court will not disturb that finding.

        Petitioner's disproportionality argument likewise lacks merit. As the magistrate judge correctly noted, and as petitioner acknowledges at page 17 of his objections, a habeas court

may grant relief on this basis only if there is "extreme disparity" or "gross disproportionality" between crime and sentence. *See Harmelin v. Michigan*, 501 U.S. 957, 994-95 (1991); *United States v. Cornell*, 162 Fed. Appx. 404, 414 (6th Cir. 2006); *United States v. Hopper*, 941 F.2d 419, 422 (6th Cir. 1991). Petitioner pled guilty to second degree murder, which carries a potential maximum sentence of life imprisonment. *See* M.C.L. § 750.317. Petitioner's sentence of 23 to 60 years was within the statutory maximum and is therefore presumptively constitutional. *See United States v. Organek*, 65 F.3d 60, 62-63 (6th Cir. 1995). Petitioner cites no case authority, and the court is aware of none, suggesting that a sentence of 23 to 60 years is "grossly disproportionate" to a second degree murder conviction. To the contrary, the Sixth Circuit specifically has held that a sentence of 40 to 60 years for a second-degree murder conviction under Michigan law does not violate the Eighth Amendment. *See Austin v. Jackson*, 213 F.3d 298, 302 (6th Cir. 2000). Further, to the extent petitioner relies on the trial court's alleged misapplication of state sentencing guidelines, this is purely a matter of state law and is therefore not cognizable in a federal habeas proceeding. *See Pulley v. Harris*, 465 U.S. 37, 41 (1984); *Thomas v. Foltz*, 654 F. Supp. 105, 107 (E.D. Mich. 1987). Accordingly,

IT IS ORDERED that petitioner's objections to the magistrate judge's report and recommendation are overruled.

IT IS FURTHER ORDERED that the magistrate judge's report and recommendation is accepted and adopted as the findings and conclusions of the court.

7

IT IS FURTHER ORDERED that this petition is dismissed.

_____s/Bernard A. Friedman _____
BERNARD A. FRIEDMAN
CHIEF UNITED STATES DISTRICT JUDGE

Dated: January 31, 2007
        Detroit, Michigan

I hereby certify that a copy of the foregoing document
was served this date upon counsel of record
electronically and/or via first-class mail.

_____/s/ Patricia Foster Hommel_____
        Patricia Foster Hommel
     Secretary to Chief Judge Friedman

8